. 206 .So.2d 894

**Eugene BIRGE**

**v.**

**STATE.**

**4 Div. 582.**

Court of Appeals of Alabama.

Aug. 29, 1967.

Rehearing Denied Oct. 10, 1967.

Farmer & Farmer, Dothan, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Eugene Birge was convicted for assault with intent to murder. Punishment was fixed at twelve years in the penitentiary.

The state's evidence tended to show that the next night after Mrs. Kathleen Tate had told defendant and his companion, Mack Cole, she would appreciate it if they would not drive through trees and over her grass when they were coming from the house next door, the same 1965 model two door two-tone green Oldsmobile defendant was driving the previous evening, drove through the horseshoe driveway of the Beauty Rest Motel twice, fifteen minutes apart. The first time a gun fired as the car was about to re-enter the highway. On the second trip through the driveway the gun was fired when the automobile was in front of the house trailer where Mr. and Mrs. Tate were living, next door to the motel office. The lights were on in the trailer. Mrs. Tate testified when the shot was fired she jumped up; the splinters were falling down her back. The living room mirror fell to the floor—she found and picked up some shotgun pellets that had been fired through the trailer wall. The shot went through the front wall, kitchen cabinet, the walls of two bedrooms. It hit and tore to pieces the light in one bedroom, went into the bathroom wall and hit the bathroom mirror.

Kathy Bowers testified she was sitting in a chair in front of the motel and saw the car drive by with two men in the front

seat; that she could not identify either of the men; that a few minutes later after she had gone upstairs to her apartment she saw the automobile drive back through and heard the shot when it reached the trailer. She went downstairs and saw the shot scattered throughout the trailer.

Artis Smith testified he was in the automobile with defendant and Mack Cole when the shooting occurred. Birge was driving, Cole was in the back seat and witness was in the front seat with Birge; that they drove into the driveway in front of the Beauty Rest Motel and went around the "half-moon." In front or just beyond the front of the motel a shotgun went off; Mack Cole had the shotgun when it fired. The load went through the backrest of the front seat and through the door on the right side. He heard Mack Cole tell Birge to go through the driveway again; that they went through the driveway again and another shot was fired.

Jack Adkins, a policeman, stated he saw the defendant at his apartment in the early hours of the morning after the shooting. Birge showed him his automobile, and took a shotgun from under the front seat and gave it to the witness together with some shells; that he and a state toxicologist, Purnell, found some gun wadding at the trailer, took paint samples and made certain tests. There was a large hole in the right-hand front door of Birge's automobile.

Mr. Guy Purnell, a toxicologist in criminal investigation for the State of Alabama, testified, after stating his qualifications, that he examined the trailer and found extensive damage. He found a flake of paint on the driveway, a plastic type material and shotgun wadding. He also saw the hole in the door of defendant's automobile and removed a piece of metal from around it. He also removed a couple pieces of lead from between the interlining and the outside wall. He made tests on the paint specimen and they appeared to be the same. The plastic type material was the same as the lining in the door of the automobile.

The tests made of the lead pellets indicated they were number one buckshot. The wadding was fired from a sixteen gauge gun. The gun turned over to him by Officer Adkins was a sixteen gauge. The gun and pellets were introduced in evidence.

The defendant denied that he was at the Beauty Rest Motel the night in question; that he saw Ollie Smith at Horace Still's Service Station Saturday about 2 o'clock and did not see him again for three or four days; that on Saturday night, September 25, 1965, he was sitting in a car at Still's Service Station; that the last time he saw Mack Cole that day was about 4:30 P.M., at Cole's house, where he stayed for about thirty minutes, and did not see him again until Sunday night; that he owned a 1956 green and white automobile; that after carrying his wife home from getting groceries he went to Still's Service Station, where he stayed from about 7 o'clock until 8:30 or 9:00 P.M., that he parked his car on the west side of the station headed towards the bathroom; that he left the keys in it, but when he went back to get it, it was sitting in a side street parked south; that after he parked his car he was around the grease rack and cash register; that on Sunday morning Policeman Adkins came to his house, and he told Adkins he had a shotgun under the seat broken down; that he got it and gave it to Adkins; that he got the gun from his brother about four days before; that the first time he noticed the hole in the right-hand car door was when Detective Adkins came to his house on Sunday morning.

■ The evidence was sufficient to sustain the judgment of conviction. No error resulted from the denial of the motion for a new trial on the ground the verdict was contrary to the evidence.

The trial court charged the Jury:

"There has been some mention of assault and battery. There cannot be an assault and battery, gentlemen, unless there is

an actual touching of the person of the party alleged to have been assaulted. There must be some kind of touching, lick, striking or hitting of the person of another, in a rude and angry or unlawful manner, for there to have an assault and battery."

Counsel for defendant reserved an exception to the oral charge, as follows:

"The defendant excepts, generally, to the Court's charge in that the Court has charged to the Jury the law from a negative standpoint rather than from a positive standpoint; in that the Court has charged the Jury in substance not so much what the law now is, but what the law isn't. The defendant excepts to that portion of the charge of the Court which says the defendant could not be, under the evidence in this case, be convicted of assault and battery."

The argument in counsel's reply brief is as follows:

"In the Trial Court's charge to the jury mention was made of the fact that something had been said about the charge of assault and battery being included in the indictment for assault with intent to murder. In the original brief, I took the liberty of saying that in view of this statement, the only thing that had been said about the point in question was my statement to the jury that the lesser charge was included in the larger one and I felt sure that the Court would so instruct the jury and give them a choice if they should find the Defendant guilty.

"The Trial Judge then proceeded to answer my argument by oral instructions to the jury defining the elements of an assault and battery, which instructions on the whole was a good definition. But he then proceeded to instruct the jury that they would have to find the Defendant guilty of assault with intent to murder or guilty of nothing. It was then that I excepted to the action of the Court which in effect told the jury that they could not convict the Defendant of assault and battery under the testimony in the case.

"Inasmuch as the Court specifically called the attention of the jury to the fact in effect that the question of assault and battery had been raised, and then told the jury that they could not convict the Defendant for assault and battery, it was the defense and contention then and it is the Appellant's contention now, that the Court thus made an error and the Defendant's exception sufficiently apprised the Court of the error in question."

This argument seems to be directed to the fact that the court charged the jury on the forms of verdict if they should find defendant guilty of assault with intent to murder or if they should acquit him, but omitted to instruct them as to the form of verdict in the event they were convinced from the evidence that he was guilty of an assault and battery.

In Patterson v. State, 37 Ala.App. 161, 66 So.2d 191, the court stated:

"There are numerous authorities which hold that a reviewable question is not presented by an exception to the court's omission or failure to charge on a legal proposition. A party's remedy under such circumstances is to request a written instruction. Davis v. State, 246 Ala. 101, 19 So.2d 358; Long v. State, 24 Ala.App. 571, 139 So. 113."

Furthermore, the exception did not specifically point out that the objectionable portion of the charge was the failure to give to the jury the form of verdict it might return if it found the defendant guilty of assault and battery. See 7 Alabama Digest Criminal Law ☞1059(2).

We find no reversible error in the record. The judgment is affirmed.

Affirmed.